1  Stephen V. O'Neal (State Bar No. 95804)
   soneal@jonesday.com
2  Kent W. Lindsay (State Bar No. 120833)
   klindsay@jonesday.com
3  David L. Wallach (State Bar No. 233432)
   dwallach@jonesday.com
4  JONES DAY
   555 California Street, 26th Floor
5  San Francisco, CA 94104
   Telephone:    415.626.3939
6  Facsimile:    415.875.5700

7  Attorneys for Respondents
   CHEVRON U.S.A. HOLDINGS, INC. AND
8  CHEVRON U.S.A. INC.

9

**FILED**

MAY 1 1 2017

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

By Fax

10              UNITED STATES DISTRICT COURT

11              NORTHERN DISTRICT OF CALIFORNIA

12                      OAKLAND DIVISION

13

14  CPB Contractors Pty Limited,            Misc. Case No. CV- 17-80060 -MISC.

                Plaintiff,                  EDL
15
                                            Underlying Case No. 16-cv-2812 pending
16        v.                                in the Southern District of Texas

17  KBR, Inc., et al.,                      **RESPONDENTS CHEVRON U.S.A.
                                            HOLDINGS, INC. AND CHEVRON
18              Defendants.                  U.S.A. INC.'S MOTION TO QUASH
                                            SUBPOENAS AND IMPOSE
19                                          SANCTIONS**

20

21

22

23

24

25

26

27

28

RESPONDENTS' MOTION TO QUASH

# **TABLE OF CONTENTS**

**Page**

NOTICE OF MOTION ................................................................................................ 1

RELIEF REQUESTED .............................................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................ 1

I.  BACKGROUND ............................................................................................ 2

    A.  The Jetty Contract and Construction of the Jetty ............................... 2

    B.  CPB Launches Collateral Copycat Actions in California and Texas against U.S. Affiliates of Chevron Australia and KJV ...................... 4

    C.  The Arbitration ................................................................................... 6

    D.  Chevron and KBR Each Removed to Federal Court and Moved to Stay and Compel Arbitration under the Federal Arbitration Act ........... 7

        1.  This Court Found that CPB's Collateral Litigation of Disputes under the Jetty Contract Must Be Stayed under the FAA ........... 7

        2.  The Texas Court Has Not Ruled ................................................ 8

    E.  The Subpoenas ................................................................................... 8

II.  ARGUMENT ................................................................................................ 10

    A.  This Is the Proper Court to Determine Respondents' Motion to Quash ............... 10

    B.  The Subpoenas Interfere with the Arbitration Agreement and Undermine the Court's Order Staying CPB's Claims Against Respondents........................... 11

    C.  The Subpoena to Chevron U.S.A. Holdings, Inc. Is Invalid Under Rule 45(c) ............... 15

    D.  Respondents Should Be Awarded their Costs and Attorneys' Fees ..................... 15

    E.  If the Subpoenas Are Not Quashed, the Court Should Enter a Protective Order Strictly Limiting CPB's Use and Disclosure of Information..................... 16

III.  CONCLUSION ............................................................................................ 16

**TABLE OF AUTHORITIES**

**Page**

CASES

*Clouser v. Ion Beam Applications, Inc.*,
No. c-03-5539, 2004 WL 540514 (N.D. Cal. Mar. 18, 2004)......................................14

*Co-Efficient Energy Sys. v. CSL Indus., Inc.*,
812 F.2d 556 (9th Cir. 1987)..........................................................................................15

*Corpman v. Prudential–Bache Sec., Inc.*,
907 F.2d 29 (3d Cir. 1990)................................................................................................7

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985)........................................................................................................14

*Emhart Indus., Inc. v. New England Container Co.*,
No. CA 06-218S, 2008 WL 5340134 (D.R.I. Dec. 19, 2008)........................................13

*GEA Group AG v. Flex-N-Gate Corp.*,
740 F.3d 411 (7th Cir. 2014)............................................................................................7

*Gonzales v. Google, Inc.*,
234 F.R.D. 674 (N.D. Cal. 2006)....................................................................................14

*Grigson v. Creative Artists Agency L.L.C.*,
210 F.3d 524 (5th Cir. 2000)..........................................................................................14

*Harry F. Ortlip Co. v. George Hyman Constr. Co.*,
126 F.R.D. 494 (E.D. Pa. 1989)......................................................................................12

*In re Refco Securities Litig.*,
759 F. Supp. 2d 342 (S.D.N.Y. 2011).............................................................................12

*Oppenheimer Fund, Inc. v. Sanders*,
437 U.S. 340 (1978)........................................................................................................12

*Salinas v. Istar Blues, LLC*,
No. 15cv2456-AJB, 2016 WL 6611102 (S.D. Cal. Nov. 9, 2016) ..................................7

*Samuels v. Mitchell*,
155 F.R.D. 195 (N.D. Cal. 1994) ...................................................................................14

*Sommer v. Aronow*,
No. 95 Civ 9230, 1996 WL 399820 (S.D.N.Y. July 16, 1996).......................................13

*Suarez-Valdez v. Shearson Lehman/American Express, Inc.*,
858 F.2d 648 (11th Cir. 1988)..........................................................................................7

RESPONDENTS' MOTION TO QUASH

**TABLE OF AUTHORITIES**
(continued)

Page

*United States v. 2121 Celeste Road SW,*
    307 F.R.D. 572 (D.N.M. 2015) ................................................................................10

*XTO Energy, Inc. v. ATD, LLC,*
    No. CIV 14-1021, 2016 WL 1730171 (D.N.M. Apr. 1, 2016) ...............................10

**STATUTES**

9 U.S.C. § 3 ..............................................................................................................7, 8

9 U.S.C. § 205 ................................................................................................................7

28 U.S.C. § 1391 ...........................................................................................................15

**RULES**

Fed. R. Civ. P. 26 ..................................................................................................*passim*

Fed. R. Civ. P. 45 ..................................................................................................*passim*

**OTHER AUTHORITIES**

9A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* §
    2463.1 (3d ed. 2008) ...............................................................................................10

RESPONDENTS' MOTION TO QUASH

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**NOTICE OF MOTION**

PLEASE TAKE NOTICE that on June 20, 2017, before the Honorable Judge to whom this matter is assigned, at the time designated by chambers for hearing civil motions, at 1301 Clay Street, Oakland, California, Respondents Chevron U.S.A. Inc. and Chevron U.S.A. Holdings, Inc. will move this Court pursuant to Rule 45 of the Federal Rules of Civil Procedure for an order quashing the subpoenas served on them by CPB Contractors Pty Limited ("CPB") and imposing sanctions on CPB and its attorneys.  Copies of the subpoenas are attached as Exhibits 1 and 2 to the Declaration of David L. Wallach.  This motion is based on this notice, the memorandum of points and authorities, the Wallach Declaration, the Declaration of Frank Soler, such other pleadings and documents as may be filed in support of and opposition to the motion, and all pleadings on file in *CPB Contractors Pty Limited v. Chevron Corp.*, 16-cv-05344-CW (N.D. Cal.).

**RELIEF REQUESTED**

1.      An order quashing the subpoenas served on Respondents by CPB and imposing sanctions;

2.      To the extent any part of the subpoenas is not quashed, an order preventing CPB from using any produced information for the improper purpose of supporting its claims in arbitration or in litigation that has been stayed by this Court, by barring CPB from disclosing any produced information to its attorneys in the arbitration or the stayed litigation, or any of its employees, representatives or agents involved in the arbitration or the stayed litigation.

**MEMORANDUM OF POINTS AND AUTHORITIES**

CPB's subpoenas are an improper attempt to undermine CPB's arbitration agreement with Respondents' affiliate, Chevron Australia Pty Ltd. ("Chevron Australia"), and to circumvent this Court's Order staying the very discovery CPB now seeks.  In the Texas action from which CPB issued these subpoenas, CPB's claim is that U.S.-based KBR entities controlled their Australian affiliate and directed it, in its capacity as Chevron Australia's construction manager on a large construction project in Australia, to reject Change Order Requests ("CORs") submitted by a contractor consortium of which CPB was a part.  There are no allegations in that action

RESPONDENTS' MOTION TO QUASH

1   concerning Respondents.  There is thus no legitimate reason for CPB to seek discovery from

2   Respondents to establish those claims.  The only plausible explanation for CPB's subpoenas is

3   that it is seeking to obtain evidence for ulterior purposes.

4          Just six months ago, this Court blocked a related attempt by CPB to undermine its

5   arbitration agreement with respect to disputes concerning the Australian construction project.

6   CPB sought to evade its agreement to arbitrate by asserting derivative claims against Respondents

7   for allegedly tortiously interfering with CPB's contract with Chevron Australia by purportedly

8   directing Chevron Australia to reject CPB's CORs.  This Court correctly held that any

9   proceedings on those claims—including discovery—must be stayed until an arbitration pending

10  in Australia determines whether CPB's CORs had any merit and, if so, the amounts if any due to

11  CPB.

12         To evade that order, CPB served non-party discovery subpoenas on Respondents in

13  connection with claims that CPB filed in Texas against U.S.-based KBR entities.  The defendants

14  in the Texas action moved in September 2016 to stay proceedings on the same basis that the

15  Court stayed the proceedings against Respondents here.  The Texas court has not ruled on

16  Defendants' motion to stay.  Thus, CPB is trying to use the Texas action to accomplish what this

17  Court already barred it from doing, *i.e.*, using U.S. litigation procedures to obtain discovery that

18  CPB contracted to forgo in its arbitration agreement.

19         CPB's brazen attempt to avoid its arbitration agreement and skirt this Court's order

20  staying its claims against Respondents is improper.  CPB's subpoenas should be quashed, and

21  CPB and its counsel should be sanctioned for their transparent misconduct.  If the Court declines

22  to quash any part of CPB's subpoenas, however, it should prevent CPB from misusing any

23  information produced by Respondents by ordering CPB not to disclose such information to any

24  attorneys, employees or other agents involved in the Australian arbitration or in the litigation

25  brought by CPB against Respondents, which this Court stayed.

26  I.     **BACKGROUND.**

27         A.     **The Jetty Contract and Construction of the Jetty.**

28         CPB, as part of a consortium with Saipem SA and Saipem Portugal Comercio Maritimo

RESPONDENTS' MOTION TO QUASH

- 2 -

1    LDC (together, "Saipem"), was awarded a contract (the "Jetty Contract" or "Contract") to build a

2    1.3 mile long jetty (the "Jetty project") as one part of a much larger liquefied natural gas project

3    (the "Gorgon Project") on Barrow Island off the coast of Western Australia.  ECF No. 2-1

4    (Compl. ¶¶ 22, 32).[1]  The Gorgon Project is owned by a joint venture consisting of Chevron

5    Australia and others (together, "Chevron Australia JV").  *Id.* ¶ 28.  Chevron Australia JV retained

6    a joint venture consisting of four companies, one of which was KBR E&C Australia Pty Limited,

7    as an agent to perform construction management functions on the Jetty project.  *Id.* ¶ 31.  CPB

8    refers to the Owner's construction management agent as "KJV."  *Id.*  The Contract was executed

9    among CPB, Saipem, Chevron Australia, and KJV.  *Id.* ¶ 32.  The Contract Price for construction

10   of the jetty was AU$ 844.5 million.  *Id.* ¶ 33.

11          The Contract requires all "Disputes" to be resolved in arbitration.  Article 21.2 of the

12   General Terms and Conditions of the Jetty Contract states that "Any Dispute" that cannot be

13   resolved through negotiations must be "exclusively and finally settled" through binding

14   arbitration in Perth, Western Australia, under the UNCITRAL Rules.  ECF No. 10-4 (Mattys

15   Decl., Ex. A).  "Dispute" is defined broadly as "any dispute or controversy arising out of this

16   Agreement or the performance of the Work, including a Claim and any dispute or controversy

17   regarding the existence, construction, validity, interpretation, enforceability or breach of this

18   Agreement."  *Id.*, Art. 1.26.[2]

19          Over the course of the work, CPB and its consortium partners sought to increase the

20   amounts to be paid under the Jetty Contract by submitting hundreds of Change Order Requests

21   ("CORs") totaling more than AU$ 3 billion.  ECF No. 10-3 (Mattys Decl. ¶ 7).  Chevron

22   Australia JV approved some of the CORs and rejected others, ultimately agreeing to increase the

23   contract price from AU$ 844.5 million to AU$ 1.85 billion.  *Id.*  Not satisfied with this result, on

24   February 9, 2016, CPB and its consortium partners served a Notice of Dispute on Chevron

25   ─────────────────

26   [1] All ECF citations are to the docket in *CPB Contractors Pty Limited v. Chevron Corp.*,
     16-cv-05344-CW (N.D. Cal.), unless otherwise stated.

27   [2] "Claim" is defined as "any claim, liability, loss, demand, damages, Lien, cause of action
     of any kind, obligation, costs, royalty, fees, assessments, penalties, fines, judgment, interest and
28   award (including recoverable legal counsel fees and costs of litigation of the Person asserting the
     Claim), whether arising by law, contract, tort, voluntary settlement or otherwise."  *Id.*, Art. 1.11.

RESPONDENTS' MOTION TO QUASH

- 3 -

1    Australia JV as part of the contractual dispute resolution process set forth at Article 21.2 of the

2    Jetty Contract.  ECF No. 2-1 (Compl. ¶ 267); ECF No. 10-6 (Mattys Decl., Ex. C).

3          The Notice of Dispute lists 162 CORs that CPB claims were wrongfully rejected in whole

4    or in part.  In total, CPB and its consortium partners seek an additional AU$ 1,934,953,497, US

5    $121,293,597, €63,171,234, and RM (Malaysian Ringgit) 5,443,817 through the Notice of

6    Dispute.  CPB and its consortium partners seek to recover all amounts allegedly owed under the

7    Jetty Contract; to recover damages for Chevron Australia JV's alleged failure to pay in

8    accordance with the Jetty Contract; and to resolve related disputes about the timing and schedule

9    of the Gorgon Project.

10          **B.     CPB Launches Collateral Copycat Actions in California and Texas against**

11                **U.S. Affiliates of Chevron Australia and KJV.**

12          On August 29, 2016, CPB filed two collateral actions in the United States: one in

13    California Superior Court against Respondents and other Chevron U.S. entities and another in

14    Texas Superior Court against several KBR U.S. entities (collectively, "KBR").[3]  ECF Nos. 2-1

15    and 10-2 (Wallach Decl., Ex. 1).  In both cases, CPB seeks to recover for the same CORs at issue

16    in its Notice of Dispute, alleging that the U.S. Chevron and KBR entities tortiously interfered

17    with the Jetty Contract by causing their Australian affiliates to reject CPB's CORs.

18          The two complaints allege wholly separate and independent conduct:  the California

19    complaint alleges that Respondents controlled Chevron Australia's conduct under the Jetty

20    Contract, and the Texas complaint alleges that the KBR U.S. entities controlled KJV's conduct

21    under the Jetty Contract.  The Complaints do not allege that the U.S. Chevron and KBR entities

22    engaged in any joint or coordinated conduct during or after the Jetty project.  Respondents are not

23    mentioned even once in the 351 paragraph complaint against KBR.  The only mention in that

24    complaint of any of the Chevron U.S. entities is a statement that Chevron Corp. is the ultimate

25    parent of Chevron Australia.  ECF No. 10-2 (¶ 25).[4]  Likewise, the KBR U.S. entities are not

26    _____

[3] The Texas complaint names eight entities as defendants: KBR, Inc.; KBR Holdings,
27    LLC; KBR Group Holdings LLC; KBR USA LLC; Kellogg, Brown & Root LLC; Kellogg,
Brown & Root International, Inc.; Kellogg, Brown & Root Services, Inc.; and KBR Technical
28    Services, Inc.

[4] Paragraph 25 of the Texas complaint refers to "Defendant Chevron Corp."  Apparently,

RESPONDENTS' MOTION TO QUASH

- 4 -

1    mentioned once in the complaint against Respondents.

2           Although they concern wholly separate and independent alleged conduct, the charging

3    allegations in the Texas and California complaints—all of which are asserted on "information and

4    belief"—are substantially identical.  The only material difference is that references in the

5    California action to the "Chevron U.S. Defendants" and "Chevron JV" were changed in the Texas

6    action to the "KBR U.S. Defendants" and "KJV."  For example, compare paragraph 2 of the

7    California complaint (ECF No. 2-1) with paragraph 2 of the Texas complaint (ECF No. 10-2):

8           • "On information and belief, time and time again, the Chevron U.S. Defendants in
9             bad faith instructed their Australian subsidiary, Chevron Australia Pty Limited
              ("Chevron Australia"), and other contracting parties to repeatedly and wrongfully
10            reject Plaintiff s fully-supported "Change Order Requests," or Plaintiff's requests
              for adjustments to the contract price for additional work specifically requested by
11            the project owner and/or its agent that was not within the original scope of work
              for the project."
12

13          • "On information and belief, time and time again, the KBR U.S. Defendants in bad
              faith instructed their Australian subsidiary, KBR E&C Australia Pty Limited
14            ("KBR Australia"), and other contracting parties to repeatedly and wrongfully
              reject Plaintiff's fully-supported "Change Order Requests," or Plaintiff's requests
15            for adjustments to the contract price for additional work specifically requested by
              the project owner and/or its agent that was not within the original scope of work
16            for the project."

17   Compare paragraph 52 of the California complaint with paragraph 49 of the Texas complaint:

18          • "On information and belief, the Chevron U.S. Defendants in bad faith instructed
19            and directed Chevron Australia and the other members of the of Chevron JV, as
              well as KJV, to repeatedly and wrongfully reject Plaintiff's fully-supported CORs
20            and IPPAs on the Gorgon Project in breach of the Jetty Contract."

21          • "On information and belief, the KBR U.S. Defendants in bad faith instructed and
22            directed KBR Australia and the other members of KJV to repeatedly and
              wrongfully reject Plaintiff's fully-supported CORs and IPPAs on the Gorgon
23            Project in breach of the Jetty Contract."

24   Compare paragraph 66 of the California complaint with paragraph 63 of the Complaint in the

25   Texas action:

26   _____
     (continued...)

27   in cutting and pasting the allegations from the California action into the Texas complaint, CPB
     failed to delete the word "Defendant" from its description of Chevron Corp. *Compare* ECF No.
28   2-1 (¶ 28), *with* ECF No. 10-2 (¶ 25).

                                                     RESPONDENTS' MOTION TO QUASH

- "On information and belief, the Chevron U.S. Defendants in bad faith instructed and directed Chevron Australia and the other members of Chevron JV, as well as KJV, to improperly and entirely reject Plaintiff's monthly IPPAs submitted on the Gorgon Project because the IPPAs included claims for unapproved CORs in direct violation of Article 20.2.6 of the Jetty Contract."

- "On information and belief, the KBR U.S. Defendants in bad faith instructed and directed KBR Australia and the other members of KJV to improperly and entirely reject Plaintiff's monthly IPPAs submitted on the Gorgon Project because the IPPAs included claims for unapproved CORs in direct violation of Article 20.2.6 of the Jetty Contract."

These are only a few examples. Substantially all of the other factual allegations made against Chevron U.S. entities in California were made verbatim against KBR U.S. entities in Texas, and vice versa. *Compare* ECF No. 2-1 (Compl. ¶¶ 86, 89, 97, 110, 124, 164, 179, 182, 187, 203, 218, 221, 251, 257 and 266), *with* ECF No. 10-2 (Wallach Decl. Ex. 1 ¶¶ 83, 86, 94, 107, 121, 161, 176, 179, 184, 200, 215, 218, 248, 254 and 263).

**C.     The Arbitration.**

In view of the clear Contract requirement that Disputes be resolved in arbitration, and of CPB's transparent effort to avoid its obligations by filing meritless claims in U.S. courts, Chevron Australia initiated arbitration on September 20, 2016, in accordance with the requirements of the Contract. ECF No. 10-8 (Mattys Decl., Ex. E). In the arbitration, Chevron Australia seeks an affirmative recovery against CPB and its consortium partners for its breaches of the Jetty Contract and a determination of final amounts due, if any, to CPB and its consortium members under the terms of the Jetty Contract. *Id.* Among other relief, Chevron Australia's Notice of Arbitration seeks a determination by the tribunal regarding the amounts, if any, due to Saipem, Saipem Portugal, and CPB under the Gorgon Jetty Contract. *Id.* CPB has acknowledged that the arbitration agreement is valid and stated that it will bring counterclaims in the arbitration for any amounts that it claims to be owed under the Jetty Contract. ECF No. 53-2 (Quintanilla Decl., Ex. A).

The tribunal, consisting of three arbitrators, has been fully impaneled, and each side is due on September 15, 2017, to submit its full affirmative case, including legal memorials, witness statements, expert reports, and all documents on which the party relies. Wallach Decl., ¶ 5. The

RESPONDENTS' MOTION TO QUASH

- 6 -

1  parties then will each have the opportunity to serve document requests on each other by

2  November 10, 2017. *Id.* Objections to document requests are due December 8, the tribunal will

3  rule on objections by January 15, 2018, and document productions will be completed by February

4  1, 2018. *Id.*

5      **D.      Chevron and KBR Each Removed to Federal Court and Moved to Stay and**

6              **Compel Arbitration under the Federal Arbitration Act.**

7      Respondents and KBR both removed the U.S. actions under 9 U.S.C. § 205 and moved to

8  stay and compel arbitration under 9 U.S.C. § 3, which states that "any suit or proceeding . . .

9  brought . . . upon any issue referable to arbitration under an agreement in writing" must be stayed

10  until arbitration is had.[5] CPB opposed Respondents' and KBR's motions on the ground that the

11  arbitration agreement is between CPB and Australian affiliates of Respondents and KBR, not

12  between CPB and the U.S. entities.  CPB also filed motions to remand both cases.

13      **1.      This Court Found that CPB's Collateral Litigation of Disputes under**

14              **the Jetty Contract Must Be Stayed under the FAA.**

15      This Court heard Respondents' motion to stay and CPB's motion to remand on November

16  29, 2016.  On December 22, 2016, Respondents filed a motion to continue the Rule 26(f)

17  conference—which would have marked the opening of discovery (*see* Fed. R. Civ. P. 26(d)(1))—

18  until the Court ruled on their motion to stay.  ECF No. 70.  CPB opposed that motion, arguing

19  that it should be permitted to proceed with discovery.  ECF No. 71 at 5.  The Court rejected

20  CPB's request for permission to proceed with discovery and granted Respondents' motion to

21  continue the Rule 26(f) conference.  ECF No. 72.

22      On January 17, 2017, the Court issued an order denying CPB's motion to remand and

23  granting Respondents' motion to stay.  ECF No. 74.  It found that "§ 3 [of the FAA] allows a

24  court to stay claims against a non-signatory based on an arbitration agreement where 'litigation

25  ───────────────
    [5] Although 9 U.S.C. § 3 refers to staying "the trial" courts have held that the entitlement to
26  a stay under Section 3 includes the right to a stay of discovery. *See Suarez-Valdez v. Shearson
    Lehman/American Express, Inc.*, 858 F.2d 648, 649 (11th Cir. 1988) (granting writ of mandamus
    reversing district court order which stayed trial but refused to stay discovery); *see also GEA
27  Group AG v. Flex-N-Gate Corp.*, 740 F.3d 411, 415 (7th Cir. 2014); *Corpman v. Prudential–
    Bache Sec., Inc.*, 907 F.2d 29, 31 (3d Cir. 1990) (per curiam); *Salinas v. Istar Blues, LLC*, No.
28  15cv2456-AJB, 2016 WL 6611102, at *2 (S.D. Cal. Nov. 9, 2016).

1    against the nonsignatory [] would have adversely affected the signatory's right to arbitration.'"

2    Section 3 also requires litigation to be stayed where the "claims against a 'nonsignatory

3    corporation . . . arose from and w[ere] inseparable from the claims against [the signatory].'" *Id.*

4    at 10:7-12 (quoting *Hill v. GE Power Systems, Inc.*, 282 F.3d 343, 347 (5th Cir. 2002)). "[T]he

5    claims in this case are based on the same operative facts as Plaintiff's claims that are currently

6    being arbitrated against Chevron Australia." *Id.* at 11:6-8. "Indeed, the 423 paragraph complaint

7    consists primarily of alleged actions by non-parties Chevron Australia and other members of the

8    joint venture that Plaintiff alleges constitute breaches of the Jetty Contract." *Id.* at 5:23-26.

9    "Each section describing such conduct is followed by a paragraph alleging, 'On information and

10   belief, the Chevron U.S. Defendants in bad faith instructed and directed Chevron Australia and

11   the other members of Chevron JV' to take those actions." *Id.* at 5:26-6:3. The Court held that

12   "proceeding with this case will interfere with Chevron Australia's right to have the claims against

13   it decided in arbitration," and therefore it stayed the action under the mandatory provisions of 9

14   U.S.C. § 3. *Id.* at 11:18-20.

15         CPB filed a motion to certify the Court's order for interlocutory appeal, arguing once

16   again that it should be permitted to proceed in taking discovery from Respondents. ECF No. 76

17   at 6-7. The Court denied CPB's motion. ECF No. 83. On April 17, 2017, CPB filed a petition

18   for a writ of mandamus. *See* ECF No. 84. To date, the Ninth Circuit has taken no action in

19   response to that petition.

20         **2.     The Texas Court Has Not Ruled.**

21         KBR's motion to stay and compel arbitration was heard by the Southern District of Texas

22   on December 22, 2016. *See CPB Contractors Pty Limited v. KBR, Inc.*, Case No. 16-cv-02812

23   (S.D. Tex.) (ECF No. 48). The Court has not yet issued a ruling or indicated when it intends to

24   do so. KBR filed a motion for a discretionary stay of discovery while the Court continues to

25   consider KBR's motion for a mandatory stay under 9 U.S.C. § 3. The Texas court denied that

26   motion in a brief order that contains no analysis. *Id.*, ECF No. 62.

27         **E.     The Subpoenas.**

28         As noted, CPB's complaint in the Texas action does not contain a single allegation

RESPONDENTS' MOTION TO QUASH

- 8 -

1  concerning Chevron U.S.A. Inc. or Chevron U.S.A. Holdings. Inc.  CPB does not allege that

2  Respondents participated in the Gorgon Jetty Project or were involved in any way.

3      Nevertheless, on April 27, 2017, CPB served subpoenas on Respondents seeking nine

4  broad categories of documents, including all documents concerning activities of KBR relating to

5  the Gorgon Jetty (Request No. 1); all documents evidencing communications between

6  Respondents, KJV or KBR concerning the Gorgon Jetty (Request No. 3); all contracts or

7  agreements among Chevron Australia, KJV, Respondents, or KBR (Request No. 4); all bids

8  submitted by any KBR entity for work, whether related to the Gorgon Jetty or not (Request No.

9  5); all communications or agreements among Respondents, KBR, KJV or Chevron JV (referred to

10  in the subpoena as "Gorgon JV") relating to the Texas lawsuit (Requests Nos. 6-8); and all

11  documents relating to an audit of CPB and its consortium partners done by KPMG for Chevron

12  Australia JV (Request No. 9).  Wallach Decl., Exs. 1 & 2.  The subpoenas also seek all

13  communications of 47 specific employees of Respondents or their affiliates concerning the

14  Gorgon Jetty, including Chevron Corporation's Chief Executive Officer, General Counsel,

15  Corporate Secretary, and many other senior officers (Request No. 2).  None of those 47

16  individuals is mentioned in the Texas complaint.  *See* ECF No. 10-2.  The only allegations by

17  CPB regarding those individuals are in CPB's complaint against Respondents, which this Court

18  stayed.  ECF No. 2-1 (¶¶ 273, 274, 290-293).

19      The subpoenas direct Respondents to produce documents in the custody or control of their

20  counsel (Instruction No .1), whom CPB knows also is counsel for Chevron Australia in the

21  ongoing arbitration.  Wallach Decl., ¶ 4.  The subpoenas purport to require Respondents to

22  produce documents on May 26, 2017 at CPB's counsel's offices in Houston.  *Id.*  In accordance

23  with Rule 45(d)(2)(B), Respondents served objections to the subpoenas on May 10, 2017.[6]

24  ―――――――――――

[6] In addition to the grounds for quashing the subpoenas in their entirety which are the subject of this motion, Respondents also objected regarding the scope, relevancy and burden of CPB's requests for production, and regarding CPB's apparent request for documents protected by the attorney-client privilege and work product doctrine.  Under Rule 45(d)(2)(B)(ii), Respondents have no obligation to search for or produce documents in response to the subpoenas unless and until, after meeting and conferring, CPB obtains an order compelling production.  If the subpoenas are not quashed in their entirety, Respondents will seek to meet and confer with CPB to narrow the scope of CPB's requests to address Respondents objections; and, to the extent the parties cannot agree on the subpoenas' appropriate scope, Respondents will oppose any motion brought by CPB to compel production.

RESPONDENTS' MOTION TO QUASH

## II.   ARGUMENT.

A subpoena must be quashed where, *inter alia*, it subjects a person to undue burden or requires a person to produce documents beyond the geographical limits established by Rule 45(c). *See* Fed. R. Civ. P. 45(d)(3). A subpoena imposes an undue burden if it is "unreasonable or oppressive." 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2463.1 (3d ed. 2008) (the 1991 amendments' change of "unreasonable and oppressive" to "undue burden" "is semantic only, and was not intended to change existing law.").

### A.   This Is the Proper Court to Determine Respondents' Motion to Quash.

A motion to quash a subpoena is properly brought in "the court for the district where compliance is required[.]" Fed. R. Civ. P. 45(d)(3)(A). Rule 45 does not define "the district where compliance is required." Courts have construed this term to mean that a motion can be properly brought in "the district in which the subpoena's recipient resides or works—rather than the issuing court." *XTO Energy, Inc. v. ATD, LLC*, No. CIV 14-1021, 2016 WL 1730171, at *20 (D.N.M. Apr. 1, 2016); *United States v. 2121 Celeste Road SW*, 307 F.R.D. 572, 587 (D.N.M. 2015). This accords with the purpose of Rule 45(d)(3)(A), which is "[t]o protect local nonparties" by assuring "local resolution of disputes about subpoenas[.]" Fed. R. Civ. P. 45 advisory committee's notes to 2013 amendment.

Respondents reside and work in the Northern District of California, where they both have their principal place of business. Soler Decl. ¶¶ 4 & 5. Neither Respondent is incorporated in Texas or has its headquarters there.[7] Accordingly, a motion to quash is properly brought in this Court.

CPB knows that Respondents have their principal places of business in California, having made allegations to that effect in its complaint in the California action. ECF No. 2-1 ¶¶ 8, 9. Nevertheless, CPB evidently sought to force Respondents to litigate the subpoenas' validity in Texas by directing Respondents to deliver documents to CPB's counsel's office in Houston. But CPB's designation of Houston as the place to which documents should be sent does not change

---

[7] Chevron U.S.A. Holdings, Inc. is incorporated in Delaware, and Chevron U.S.A. Inc. is incorporated in Pennsylvania. Soler Decl. ¶¶ 4 & 5.

RESPONDENTS' MOTION TO QUASH

1    the fact that any document search, review or production that Respondents are required to perform

2    will take place principally (if not entirely) in San Ramon, California.  Indeed, as discussed below,

3    Respondent Chevron U.S.A. Holdings Inc. cannot be compelled to produce documents in

4    Houston because it conducts no business and holds no property in Texas.  Accordingly,

5    Respondents cannot be compelled to litigate in Texas by CPB's unilateral decision to request

6    documents to be sent to its local counsel's office there.

7    **B.      The Subpoenas Interfere with the Arbitration Agreement and Undermine the**

8    **Court's Order Staying CPB's Claims Against Respondents.**

9            CPB's subpoenas should be quashed for the same reason that this Court held that CPB's

10   action against Respondents must be stayed:  they violate CPB's arbitration agreement and

11   interfere with Respondents' affiliate's right to arbitrate.  CPB contracted to resolve any Dispute—

12   defined to include any "controversy arising out of the [Jetty Contract] or the performance of the

13   Work"—"exclusively and finally" through arbitration.  ECF No. 10-4 (Mattys Decl., Ex. A) Arts.

14   1.26, 21.2.  As part of that contract, CPB agreed to a more narrow range of discovery than would

15   be available under the Federal Rules of Civil Procedure.  The parties to the Jetty Contract agreed

16   to "limit their requests for documents from each other to those that are reasonably necessary to

17   presenting or defending against the asserted claims or counterclaims."  *Id.*, Art. 21.2.5.  They also

18   agreed that "[i]f any Dispute in this regard should arise, the arbitrator(s) shall decide it."  *Id.*

19          CPB's effort to obtain discovery from Chevron Australia's affiliates regarding the

20   performance of the work under the Jetty Contract is a transparent attempt to avoid and undermine

21   CPB's arbitration agreement.  CPB's claims in the Texas and California actions are obviously the

22   product of pure speculation.  Its charging allegations all are asserted on "information and belief."

23   That CPB has no good faith basis for these allegations consistent with Rule 11 is proven by the

24   fact that it makes the same exact allegations, word for word, against Respondents in the

25   California action and KBR in the Texas action.  Moreover, the damages that CPB seeks to

26   recover in Texas and California are exactly the same as those currently being determined in the

27   Australia arbitration, *i.e.,* CPB's entitlement, if any, on its rejected CORs.  CPB's collateral

28   actions in California and Texas are simply a vehicle through which CPB seeks to gain discovery

RESPONDENTS' MOTION TO QUASH

1   under the Federal Rules and to harass Chevron and KBR.

2       In staying CPB's claims against Respondents and administratively terminating CPB's

3   action, this Court already concluded that allowing CPB to proceed with discovery and other

4   proceedings under the Federal Rules simultaneous with the Australian arbitration would interfere

5   with Chevron Australia's rights under the Jetty Contract. ECF No. 74 at 11:18-20 ("proceeding

6   with this case will interfere with Chevron Australia's right to have the claims against it decided in

7   arbitration."). CPB argued on multiple occasions that it should be allowed to proceed with

8   discovery from Respondents (ECF No. 71 at 5; ECF No. 76 at 6-7), and the Court repeatedly

9   rejected those arguments (ECF Nos. 72, 83).

10      Having been precluded from taking party-discovery from Respondents in the California

11  action, CPB seeks to skirt this Court's ruling by seeking non-party discovery from Respondents

12  in connection with the Texas action. As noted, however, there are no allegations concerning

13  Respondents in CPB's complaint in the Texas action. CPB's only allegations concerning

14  Respondents are in the California action, which this Court stayed. Similarly, the 47 individuals

15  whose communications CPB seeks are mentioned nowhere in the Texas action. CPB's only

16  allegations regarding those individuals are in the stayed California action. CPB's subpoenas are

17  thus a brazen attempt to do an end-run around this Court's order staying the California action.

18      The Supreme Court has directed that in ruling on a motion to compel discovery a court

19  should not "blind itself to the purpose for which a party seeks information." *Oppenheimer Fund,*

20  *Inc. v. Sanders,* 437 U.S. 340 n.17 (1978). "Thus, when the purpose of a discovery request is to

21  gather information for use in proceedings other than the pending suit, discovery is properly

22  denied." *Id.* "Likewise, discovery should be denied when a party's aim is to . . . harass the

23  person from whom he seeks discovery." *Id.* Therefore, courts have refused to allow a party to

24  obtain discovery under the Federal Rules where its true purpose for seeking the information is to

25  bolster its claims in arbitration. *See In re Refco Securities Litig.,* 759 F. Supp. 2d 342, 345

26  (S.D.N.Y. 2011); *Harry F. Ortlip Co. v. George Hyman Constr. Co.,* 126 F.R.D. 494, 497 (E.D.

27  Pa. 1989).

28      Similarly, courts have found that a party should not be permitted to take discovery where

RESPONDENTS' MOTION TO QUASH

1    it appears intended to obtain information that the party was precluded from seeking by a stay

2    entered in another action.  In *Sommer v. Aronow*, No. 95 Civ. 9230, 1996 WL 399820 (S.D.N.Y.

3    July 16, 1996), the court denied defendants' motion to compel answers to certain deposition

4    questions regarding issues being resolved in a separate state court action that had been stayed.

5    That the information was arguably relevant to the instant action "does not permit the Defendants

6    to use discovery in this case to sidestep a stay of discovery ordered by another Court." *Id.* at *4.

7    "The Court need not conclude that the Defendants' only motivation in seeking this discovery was

8    to bypass the . . . stay [in the parallel action].  Whether this was a motivation at all does not

9    change the fact that forcing [the deponent] to disclose this information renders the [parallel] stay

10   meaningless.  Weighing this fact against the Defendants' limited need for this information in this

11   case, the Court denies the Defendants' motion to compel [the] deposition testimony[.]" *Id.* at *5.

12   *See also Emhart Indus., Inc. v. New England Container Co.*, No. CA 06-218S, 2008 WL

13   5340134, at *1 (D.R.I. Dec. 19, 2008) (quashing a subpoena that was "a 'mischievous' attempt by

14   [plaintiffs] to get around the [parallel court's] discovery stay and to engage in a fishing expedition

15   into areas which have absolutely no relevance to the issues presented in the CERCLA

16   contribution action.").

17          CPB's discovery requests have no plausible relevance to its claims in the Texas action.

18   As noted, CPB does not allege in the Texas action that Respondents played any role in the Jetty

19   Project.  CPB's claim in the Texas action is that the KBR U.S. entities instructed KJV to reject

20   CPB's CORs.  To prove that claim, there is no reason that CPB needs to obtain communications,

21   contracts or agreements (if any exist) between Respondents and KBR or KJV (RFP Nos. 3 & 4),

22   bids submitted by KBR on the Gorgon Jetty project or other Chevron projects (RFP No. 5) or

23   documents relating to an audit of CPB and its consortium partner done for Chevron Australia by

24   KPMG (RFP No. 9).  Respondent also has no legitimate need for any tolling or indemnification

25   agreements between Respondents, KBR, KJV or Chevron Australia, or communications among

26   Respondents and KBR concerning the Texas action, and, in any event, such information is

27   unquestionably protected from disclosure by the work product doctrine. *See* RFP Nos. 6-8.[8]  Nor

28   _____
     [8]By their inherent nature, communications or agreements concerning tolling,
     indemnification or the Texas litigation are documents "prepared in anticipation of litigation or for

     RESPONDENTS' MOTION TO QUASH

                                    - 13 -

1   does CPB have any plausible basis to believe that performing burdensome searches through

2   Respondents' documents will lead to probative evidence of relevant conduct by KJV or the KBR

3   U.S. entities. *See* RFP Nos. 1 & 2.

4          To the extent any information sought by CPB's requests has any relevance to CPB's

5   claims against KBR, it is outweighed by the harm that allowing discovery from Respondents

6   would have on Chevron Australia's right to arbitrate. "[A] court determining the propriety of a

7   subpoena balances the relevance of the discovery sought, the requesting party's need, and the

8   potential hardship to the party subject to the subpoena." *Gonzales v. Google, Inc.*, 234 F.R.D.

9   674, 680 (N.D. Cal. 2006). "The FAA reflects a strong 'federal policy favoring arbitration,' and

10  requires that courts 'rigorously enforce agreements to arbitrate.'" *Clouser v. Ion Beam*

11  *Applications, Inc.*, No. c-03-5539, 2004 WL 540514, *3 (N.D. Cal. Mar. 18, 2004) (quoting

12  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) and *Dean Witter*

13  *Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985).

14         CPB's subpoenas seek discovery that CPB contracted to forgo in the parties' arbitration

15  agreement. Further, they seek to distract Chevron Australia from the arbitration proceedings by

16  embroiling it in a large-scale document search. That Chevron Australia is not the ostensible

17  target of the subpoenas is irrelevant. Chevron Australia and its attorneys inevitably would be

18  drawn into the document search and review, and any collateral disputes it may engender. *See,*

19  *e.g., Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524, 528 (5th Cir. 2000) (staying

20  litigation against affiliate of a signatory to an arbitration agreement because the "signatory, in

21  essence, becomes a party, with resulting loss, *inter alia*, of time and money because of its

22  required participation in the proceeding.").

23         In sum, CPB's subpoenas violate and undermine its agreement to arbitrate and this

24

25  (continued...)

    trial by or for [a] party or its representative[.]" Fed. R. Civ. P. 26(b)(3)(A). Nor would protection
26  be waived to the extent any responsive documents were shared with KBR or KJV. Unlike
    privilege, strict confidentiality is not necessary to preserve work-product protection. *See, e.g.,*
27  *Samuels v. Mitchell*, 155 F.R.D. 195, 201 (N.D. Cal. 1994). "Rather, the courts generally find a
    waiver only if the disclosure 'substantially increases the opportunity for potential adversaries to
28  obtain the information.'" *Id.* at 200 (citation omitted).

                                                    RESPONDENTS' MOTION TO QUASH

1    Court's stay order.  CPB's document requests are not reasonably calculated to lead to the

2    discovery of admissible evidence, and they are not proportional to the needs of the case,

3    particularly since CPB's claims are obviously the product of rank speculation.  Further, the

4    benefit to CPB of any discovery it may obtain is substantially outweighed by the prejudice to

5    Respondents and Chevron Australia.

6        **C.**       **The Subpoena to Chevron U.S.A. Holdings, Inc. Is Invalid Under Rule 45(c).**

7         A subpoena *duces tecum* may direct a party to produce documents only "at a place within

8    100 miles of where the person resides, is employed, or regularly transacts business in person."

9    Fed. R. Civ. P. 45(c)(2)(A).  Rule 45 does not define where a corporation is deemed to reside.

10    The general federal venue statute states that a corporation "shall be deemed to reside . . . in any

11    judicial district in which [the corporation] is subject to the court's personal jurisdiction with

12    respect to the civil action in question[.]"  28 U.S.C. § 1391.  For jurisdictional purposes, a

13    corporation is deemed to be a citizen of its states of incorporation and its principal place of

14    business.  *See Co-Efficient Energy Sys. v. CSL Indus., Inc.*, 812 F.2d 556, 557 (9th Cir. 1987).

15         Chevron U.S.A. Holdings Inc. is incorporated in Delaware and has its principal place of

16    business in California.  It does not transact business in Texas, and it has no property or employees

17    there.  Thus, CPB's subpoena purporting to require Chevron U.S.A. Holdings Inc. to produce

18    documents at CPB's counsel's office in Houston exceeds the geographical limits of Rule

19    45(c)(2)(A) and must be quashed pursuant to Rule 45(d)(3)(A).

20        **D.**       **Respondents Should Be Awarded their Costs and Attorneys' Fees.**

21         Rule 26(g) states that a party and its attorneys must be sanctioned where they issue

22    discovery "for any improper purpose, such as to harass, cause unnecessary delay, or needlessly

23    increase the cost of litigation," or which they know or should know is unreasonable or unduly

24    burdensome.  This rule applies with particular force to discovery from non-parties.  Thus, Rule

25    45(d)(1) states that "[t]he court for the district where compliance is required must enforce" the

26    duty to avoid imposing undue burden or expense on a person subject to the subpoena and "impose

27    an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a

28    party or attorney who fails to comply."  Fed. R. Civ. P. 45(d)(1).

RESPONDENTS' MOTION TO QUASH

1   As shown above, CPB's subpoenas are transparently designed for the improper purpose of
2   undermining its arbitration agreement with Chevron Australia. They are overbroad and unduly
3   burdensome in seeking information that is irrelevant to CPB's claims in the Texas action. CPB's
4   subpoenas also violate this Court's order staying CPB's claims against Respondents and
5   precluding it from taking discovery, and therefore warrant not only sanctions under Rules 26 and
6   45, but also a finding of contempt. As noted, CPB's only allegations concerning Respondents
7   are in the California action that this Court stayed. CPB's complaint in the Texas action does not
8   mention Respondents even once. CPB's complaint in the Texas action also does not mention any
9   of the 47 employees of Respondents and their affiliates whose communications the subpoenas
10  seek. The only allegations concerning those employees are in the stayed California action. The
11  subpoenas are not reasonably calculated to support CPB's claims in the Texas litigation. They
12  are self-evidently designed for the improper purpose of gathering evidence for use in the stayed
13  California action and the Australian arbitration.

14      **E.**    **If the Subpoenas Are Not Quashed, the Court Should Enter a Protective**
15          **Order Strictly Limiting CPB's Use and Disclosure of Information.**

16  The foregoing shows that CPB's subpoenas should be quashed because they are an
17  improper attempt to undermine CPB's agreement to arbitrate and this Court's stay of CPB's
18  claims against Respondents. To the extent the Court declines to quash any part of CPB's
19  subpoenas, however, it should enter a protective order to prevent CPB from using any
20  information produced by Respondents for the improper purpose of supporting its claims in
21  arbitration or the California litigation. Therefore, CPB should be barred from disclosing any
22  documents produced by Respondents, or any information derived from those documents, to its
23  attorneys in the California litigation, its attorneys in the Australia arbitration, and any employees,
24  agents or other representatives involved in the California litigation or Australia arbitration.

25  **III.**    **CONCLUSION.**

26  For these reasons, the subpoenas should be quashed and CPB should be ordered to pay
27  Respondents' costs and attorneys' fees in bringing this motion. In the alternative, to the extent
28  any part of the subpoenas is not quashed, the Court should enter a protective order barring CPB

RESPONDENTS' MOTION TO QUASH

- 16 -

1   from disclosing any documents produced by Respondents, or any information derived from those

2   documents, to its attorneys in the California litigation, its attorneys in the Australia arbitration,

3   and any employees, agents or other representatives involved in the California litigation or

4   Australia arbitration.

5

6   Dated: May 11, 2017                              Respectfully submitted,

7                                                    Jones Day

8

9                                                    By:  pp. Stephen V. O'Neal
10                                                        Stephen V. O'Neal

11                                                   Counsel for Respondents
                                                     CHEVRON U.S.A. HOLDINGS, INC. AND
12                                                   CHEVRON U.S.A. INC.

13  NAI-1502694453v5

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RESPONDENTS' MOTION TO QUASH